**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**JOSHUA BLOOM,**

        Plaintiff,

**v.**                                 **CIVIL ACTION NO.: 3:15-CV-11
                                          (GROH)**

**THE LIBRARY CORPORATION,
and ANNETTE MURPHY,**

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND

Currently pending before the Court is Plaintiff Joshua Bloom's Motion to Remand, [ECF 4], filed on February 25, 2015. Bloom argues that Defendant Annette Murphy is domiciled in West Virginia and therefore, pursuant to the forum defendant rule, this Court lacks diversity of citizenship jurisdiction and must remand this case to the Circuit Court of Berkeley County, West Virginia. Murphy asserts that she is a Florida citizen and that valid diversity jurisdiction exists. For the following reasons, the Court finds that Murphy is a Florida citizen. Therefore, the Plaintiff's motion is **DENIED**.

## I. Background

Bloom originally brought this civil action against Murphy and her Co-Defendant, the Library Corporation ("TLC"), by way of a complaint filed in the Circuit Court of Berkeley County, West Virginia, on November 7, 2014. In the complaint, Bloom alleged that he entered into an employment agreement with TLC in early 2007. In reliance upon that agreement, he and his wife resigned from their jobs and moved from New York to West

Virginia, where they purchased a home. Bloom averred that he performed well as TLC's chief technology officer and contributed to TLC's success during his approximately seven years with the company. However, Bloom alleged that on November 8, 2013, Murphy–TLC's co-founder, president, chief executive officer ("CEO") and chairman of the board–informed him that he was fired. In his complaint, Bloom asserted that TLC and Murphy committed violations of the West Virginia Wage Payment and Collection Act, and were also liable for breach of contract and intentional infliction of emotional distress.

It appears that the Defendants were not served with a copy of the original complaint. On November 26, 2014, Bloom filed an amended complaint. The amended complaint contained the same allegations as the original complaint, but also included an attachment: a copy of what Bloom alleged to be an employment agreement entered into by Bloom and TLC. According to Murphy, she was served with the amended complaint on or around January 23, 2015, but TLC was not served.

Murphy filed a notice of removal with this Court on February 10, 2015, pursuant to 28 U.S.C. § 1441. Murphy alleged that this Court possessed valid diversity of citizenship jurisdiction under 28 U.S.C. § 1332, because Bloom, a citizen of Pennsylvania, and Murphy, a citizen of a Florida, were not citizens of the same state, and because the amount in controversy exceeded the sum of $75,000. See § 1332(a). Murphy further argued that, although her Co-Defendant, TLC, was then and is now a Maryland corporation with a principal place of business in West Virginia, and is therefore considered to be a citizen of both Maryland and West Virginia, the forum defendant rule did not preclude Murphy's removal of this case because at the time of removal TLC had not been properly joined and served as a defendant under § 1441(b)(2). In arguing in support of his motion to remand,

Bloom does not contest the deficiencies of his service of TLC. Bloom argues that Murphy is domiciled in West Virginia, not Florida, and thus, as this Court sits in West Virginia and Murphy is a properly joined and served defendant, this civil action cannot be removed under § 1332(a). See § 1441(b)(2).

## II. Applicable Law

Under 28 U.S.C. § 1441, a defendant may remove a civil action from state court to federal court under certain circumstances. To do so, a defendant must file a notice of removal with the appropriate district court, containing "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a). A federal court is limited to exercising the authority granted to it under Article III of the Constitution or by federal statute. In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998). Because federal courts have limited subject matter jurisdiction, there is no presumption that a court has jurisdiction. Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999). Therefore, a party is required to allege facts essential to show jurisdiction in the pleadings. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936). As removal jurisdiction raises significant federalism concerns, federal courts must strictly construe removal statutes. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941). In seeking to remove an action to federal court, "[t]he burden of demonstrating jurisdiction resides with 'the party seeking removal.'" Md. Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005) (quoting Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)).

Under 28 U.S.C. § 1332, federal courts have original jurisdiction over cases where

"the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states."  § 1332(a).  Section 1332 requires complete diversity of citizenship; that is, the citizenship of each plaintiff must be diverse from the citizenship of each and every defendant.  Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011) (citing Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996)).  When reviewing the record upon consideration of a motion to remand, federal courts must determine whether valid jurisdiction exists by "look[ing] at the case as of the time it was filed in state court."  Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 390 (1998).  Under 28 U.S.C. § 1441(b)(2), commonly known as the forum defendant rule, "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) . . . may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

An individual is a citizen of the state in which he or she is domiciled.  Johnson v. Advance Am., 549 F.3d 932, 937 n.2 (4th Cir. 2008).  "Domicile requires physical presence, coupled with an intent to make the State a home."  Id.  Residence and domicile are distinct concepts; an individual can reside in one state but be domiciled elsewhere.  Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989).  Thus, in and of itself, an allegation of residency does not establish citizenship in a state; it is domicile that is determinative of citizenship.  Johnson, 549 F.3d at 937 n.2; see also Axel Johnson, Inc. v. Carroll Carolina Oil Co., 145 F.3d 660, 663 (4th Cir. 1998) ("[S]tate citizenship for purposes of diversity jurisdiction depends not on residence, but on national citizenship and domicile.").  "For federal diversity jurisdiction purposes, a corporation is a citizen of the states in which it has been incorporated and in which it has its principal place of business."  Cent. W. Va. Energy,

4

636 F.3d at 102. The Supreme Court defines principal place of business to mean "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 80 (2010).

Courts determine a party's domicile on a case by case basis, considering all of the circumstances surrounding an individual's situation. 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3612 (3d ed. 2014). Courts may consider the following factors in making that determination: "the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; [and] payment of taxes." <u>Id.</u>; <u>Frye v. S. Lithoplate, Inc.</u>, Civil Action No. 3:13-CV-63, 2013 WL 6246780, at *2 (N.D.W. Va. Dec. 3, 2013). No one of these factors is dispositive. <u>Frye</u>, 2013 WL 6246780, at *2 (citing Wright & Miller, <u>supra</u>, § 3612 (3d ed. 2014)).

When the parties' dispute concerning a motion to remand is focused upon an alleged change in domicile, a court is well-advised to be cognizant of certain default rules and presumptions. <u>See</u> <u>Vandevander v. Jimenez</u>, 2011 U.S. Dist. LEXIS 139904, *5-17 (N.D.W. Va. Dec. 5, 2011). For instance, in determining the essential elements of domicile, courts should afford little weight to a party's "statements of intention," when those statements conflict with the facts. <u>Webb v. Nolan</u>, 361 F. Supp. 418, 421 (M.D.N.C. 1972), <u>aff'd per curiam</u>, 484 F.2d 1049 (4th Cir. 1973). <u>But see</u> <u>Hamilton v. Accu-Tek</u>, 13 F. Supp. 2d 366, 370 (E.D.N.Y. 1998) ("Declarations of intent by the person whose domicile is in question are given heavy, but not conclusive, weight."). Of the aforementioned factors,

courts have found a party's voter registration and voting practices to be of particular importance. See Griffin v. Matthews, 310 F. Supp. 341, 343 (M.D.N.C. 1969) ("'Voting raises a presumption that the voter is a citizen in the state in which he votes,' and the presumption must be rebutted by evidence showing a clear intention that his citizenship is otherwise.") (quoting Messick v. S. Pa. Bus Co., 59 F. Supp. 799, 801 (E.D. Pa. 1945)), aff'd per curiam, 423 F.2d 272 (4th Cir. 1970). "When a person moves from the state of domicile to a new state, unless it can be shown or inferred from circumstances that it was for some particular purpose, expected to be only of a temporary nature, or in the existence of some particular profession, office, or calling, it does change the domicil[e]." Vandevander, 2011 U.S. Dist. LEXIS 139904, *5 (alteration in original) (quoting Granite Trading Corp. v. Harris, 80 F.2d 174, 176 (4th Cir. 1935) (quoting Ennis v. Smith, 55 U.S. 400, 423, (1852))) (internal quotation marks omitted).

### III.  Discussion

#### A.    TLC's Status Under § 1441(b)(2)

As stated above, Murphy alleges that at the time she filed her notice of removal Bloom had not yet served TLC.  If TLC had been properly joined and served before Murphy removed the case, the Court would lack jurisdiction over this civil action, as TLC is a citizen of West Virginia for purposes of federal jurisdiction and would therefore qualify as a forum defendant under § 1441(b)(2).  However, Bloom concedes that he did not serve TLC before Murphy removed the case.  Accordingly, the Court is presented with a complaint brought by a Pennsylvania Plaintiff against a Florida Defendant who was served prior to removal and a West Virginia and Maryland corporate Defendant that was not served prior to

removal. In arguing in support of his motion, Bloom does not contend that this case must be remanded because of TLC's status as a forum defendant; his argument focuses entirely on Murphy's alleged West Virginia citizenship. However, given the potentially dispositive nature of this issue of statutory interpretation, the Court is compelled to consider whether, under § 1441(b)(2), this Court can exercise valid jurisdiction over a civil action involving a forum defendant, on the basis that the forum defendant was not properly served before the case was removed by a non-forum defendant.

Pursuant to § 1441(b)(2), a case otherwise removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Whether or not the statute's "properly joined and served" language precludes removal when a forum defendant has not been served at the time of removal is a hotly contested issue; across the country, district courts are "sharply divided" on the topic. Phillips Constr., LLC v. Daniels Law Firm, PLLC, — F. Supp. 3d —, Civil Action No. 2:14-CV-23809, 2015 WL 1276744, at *8 n.2 (S.D.W. Va. Mar. 19, 2015). Neither the Supreme Court nor the Fourth Circuit has addressed the issue.

Multiple federal courts in West Virginia have considered the question, with divergent outcomes. Compare Vitatoe v. Mylan Pharm., Inc., Civil Action No. 1:08-CV-85, 2008 WL 3540462, at *6 (N.D.W. Va. Aug. 13, 2008) ("[P]olicy arguments notwithstanding, the statutory language of § 1441(b) requiring that the forum defendant be 'joined and served' to preclude removal is unambiguous and must be given its plain meaning."), and Konikowski v. Wheeling Island Gaming, Inc., Civil Action No. 5:12-CV-94, 2012 WL 5378252, at *4 (N.D.W. Va. Oct. 31, 2012) ("[R]emoval would have been proper regardless

7

of defendant['s] . . . residency, because although she was a defendant of the forum state, she was not properly served at the time of removal."), with Phillips Constr., 2015 WL 1276744, at *9 (finding that "the plain meaning of the forum-defendant rule statute produces absurd and untenable results" and holding that, where the defendants in an action are residents of the forum state, the forum defendant rule bars removal, "regardless of whether Defendants removed it prior to service").

This Court empathizes with those that have recognized how a plain language reading of § 1441(b)(2) can produce peculiar results. See Phillips Constr., 2015 WL 1276744, at *5-8 (collecting cases and stating that the court "will not read Section 1441(b)(2) in a manner that would eviscerate the forum-defendant rule and promote results so far afield from the congressional intent behind the statute"). Some find that allowing removal before a forum defendant has been served naturally engenders a tendency in defendants to "race to remove," Swindell–Filiaggi v. CSX Corp., 922 F. Supp. 2d 514, 521 (E.D. Pa. 2013), even though § 1441(b)(2) was designed to limit the diversity jurisdiction of federal courts, Sullivan v. Novartis Pharmaceuticals Corp., 575 F. Supp. 2d 640, 643 (D.N.J. 2008). Furthermore, requiring a district court to essentially ignore an unserved forum defendant once a case has been removed has the potential to pose "needless jurisdictional problems." Pecherski v. Gen. Motors Corp., 636 F.2d 1156, 1161 n.6 (8th Cir. 1981) ("Because simultaneous service upon multiple defendants is unlikely to occur, removal could be proper one day when service of certain defendants was completed, but improper the next day when all defendants have been served."). However, while the application of § 1441(b)(2) in such circumstances can be fairly deemed peculiar, the statute is in no way ambiguous. Because the language of § 1441(b)(2) unambiguously requires

that a party be properly served before the forum defendant rule can apply, this Court joins with the other courts in the Northern District of West Virginia that have applied the statute's plain meaning.  See Vitatoe, 2008 WL 3540462, at *6 (Keeley, J.); Carman v. Bayer Corp., Civil Action No. 5:08-CV-148, 2009 WL 1649715, at *3 (N.D.W. Va. June 10, 2009) (Stamp, J.) ("[T]he plain and unambiguous language of § 1441(b) requires that the forum defendant be 'joined and served' to preclude removal.").

Pursuant to the "plain meaning rule" of statutory interpretation, "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language."  Hillman v. I.R.S., 263 F.3d 338, 342 (4th Cir. 2001) (citing Caminetti v. United States, 242 U.S. 470, 485 (1917)).  There exist certain "extremely narrow" exceptions to the plain meaning rule, id., none of which apply in the instant case.  One such exception applies when "literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent to the contrary." Id. (citing Sigmon Coal Co. v. Apfel, 226 F.3d 291, 304 (4th Cir. 2000), aff'd sub nom. Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002)).  In this case, an interpretation of § 1441(b)(2) that deviates from the statute's plain meaning would require the Court to ignore the statute's "properly joined and served" language, which this Court must presume was intentionally included by Congress.  See Montclair v. Ramsdell, 107 U.S. 147, 152 (1883) (discussing a court's duty to "give effect, if possible, to every clause and word of a statute"); see also Robertson v. Iuliano, Civil Action No. RDB 10-1319, 2011 WL 453618, at *3 (D. Md. Feb. 4, 2011) ("Any other interpretation of [§ 1441(b)] omits the 'properly joined and served' language inserted by Congress.").  Additionally, although a literal application of § 1441(b)(2) can produce peculiar results, the potential for such an outcome

is greatly lessened in circumstances like those now before the Court, where the parties are completely diverse. See Vitatoe, 2008 WL 3540462, at *5. Here, where there is complete diversity under § 1332(a) and a properly served, non-forum defendant removed the case before a forum defendant was served, a plain meaning application of § 1441(b)(2) does not frustrate the statute's purpose.

Another exception to the plain meaning rule applies when "literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd." Hillman, 263 F.3d at 342 (internal quotation marks and citation omitted). In Campbell v. Hampton Roads Bankshares, Inc., 925 F. Supp. 2d 800, 809-10 (E.D. Va. 2013), a court in the Eastern District of Virginia held that "permitting a forum defendant to appear and seek federal jurisdiction for an action through removal, whilst simultaneously asserting that it cannot be barred from removing because it has not been properly made party to the action . . . is patently absurd." However, the court expressly limited its analysis to situations in which the removing defendant was also the unserved forum defendant. Id. at 810 n.17 (noting that, while the specific issue was not before the court, "[t]his reading of the statute presumably will also allow a non-forum defendant to remove a case, even though there are forum defendants, so long as the forum defendants have not become served or otherwise involved in the case."). This Court finds that, under the circumstances presented in this case, application of the plain language of § 1441(b)(2) does not meet the extremely narrow absurdity exception. This matter is before the Court as a result of the Plaintiff's failure to serve a forum defendant over a prolonged period of time, not because of some absurd turn of events. Bloom could have prevented removal by serving the forum defendant, TLC, with either of his two complaints. Instead, Bloom filed his initial complaint

on November 7, 2014 and his amended complaint on November 26, 2014, and then refrained from serving either party until he served Murphy with the amended complaint on January 23, 2015. According to Murphy, she contacted Bloom before filing her notice of removal and inquired as to whether he had served TLC, but she received no response. Murphy removed the case to this Court on February 10, 2015. Given these facts, the Court finds no reason to deviate from the result necessitated by a plain language reading of § 1441(b)(2), which unambiguously requires that a defendant be properly joined and served before precluding removal.

As noted, in recent years, several courts in West Virginia have discussed the various issues presented during an analysis of § 1441(b)(2). In a 2012 case involving both a resident and a non-resident defendant, a court in the Southern District of West Virginia found that the "service requirement" of § 1441(b)(2) does not apply when a case is not "otherwise removable" under § 1332(a). Cook v. Bob Evans Farms, Inc., Civil Action No. 2:11-CV-01017, 2012 WL 407261, at *4 (S.D.W. Va. Feb. 8, 2012). In Cook, the court was faced with "a West Virginia plaintiff, a West Virginia defendant who was not served at the time of removal, and an out-of-state defendant." Id. Accordingly, as complete diversity did not exist at the time of removal due to the presence of a West Virginia plaintiff and defendant, the service or non-service of a defendant was of no moment. Id. Here, unlike the scenario presented in Cook, the instant case was "otherwise removable" under § 1332(a), as Bloom, a Pennsylvania citizen, is diverse from both Defendants. This would be true even if the Court found Murphy to be a West Virginia citizen.

Most recently, in March of 2015, a district court in the Southern District of West Virginia held that the forum defendant rule precludes "resident defendants from removing

11

an action pursuant to diversity jurisdiction before effectuation of service," but limited its holding to "cases involving only resident defendants." Phillips Constr., 2015 WL 1276744, at *9 (emphasis added).  The court explicitly held that it did not "reach the related issue of whether the forum-defendant rule bars pre-service removal when the case involves both resident and non-resident defendants." Id. at *9 n.3 (citing Vitatoe, 2008 WL 3540462, at *6).  In the instant case, although Bloom argues that both Defendants are resident defendants, the Court finds that Murphy is a Florida citizen for purposes of federal jurisdiction.

The facts of the instant case bear a strong similarity to those presented in Vitatoe, 2008 WL 3540462, at *1.  In Vitatoe, a Northern District of West Virginia court addressed a motion to remand filed by a Louisiana plaintiff in a case against a West Virginia corporation and a Pennsylvania corporation.  Id. at *2.  The Pennsylvania corporation removed the case to federal court before any defendant–including the West Virginia corporation, a forum defendant–had been served.  Id.  In denying the plaintiff's motion to remand, the court conducted a thorough review of the ample persuasive authority in favor of a plain language reading of § 1441(b)(2) and, determining that the statute was not at all ambiguous, the court held that a forum defendant must be "joined and served" in order to preclude removal.  Id. at *5.

This Court finds that § 1441(b)(2) requires, by its plain and unambiguous language, that a forum defendant must be "properly joined and served" in order to preclude removal. As TLC was not properly served before Murphy removed this case, TLC's status as a forum defendant does not require remand.

## B.    Murphy's Citizenship

Having determined that TLC's status as a forum defendant does not require the Court to remand this civil action, the remaining question presented to the Court is straightforward: is Defendant Murphy domiciled in West Virginia or in Florida?   Bloom argues that Murphy is domiciled in West Virginia.   He asserts, in part, that Murphy maintains a residence and owns real property in the state, is a member of multiple associations based in the state, and is the head of a corporation with its principal place of business in the state.   In support of her claim of Florida citizenship, Murphy argues that she owns a condominium in Florida, which she identifies as her primary residence.   She maintains a Florida driver's license, votes in Florida and files her taxes as a resident of that state.   While she seems to concede that she does not spend a majority of her time living in her Florida residence, she avers that this is a product of her work-related travel more so than her connections to West Virginia.   Murphy asserts that her children visit her at her Florida home during major holidays.   She further avers that she intends to spend more time in Florida as she ages and that she has taken active steps to sell her property in West Virginia.   While she is the president, CEO and chairman of the board of a West Virginia-based company, she claims that she often works remotely from Florida and has delegated many of her West Virginia-based responsibilities to subordinates.

The Court finds that there is merit to each party's position.   However, as provided in more detail below, upon consideration of the totality of the circumstances and the relevant factors, the Court holds that Murphy is domiciled in Florida and is a citizen of that state for purposes of federal jurisdiction.   Accordingly, the Court denies Bloom's motion to remand.

13

### 1.    Current Residence

The "current residence" factor is inherently tied together with most of the other factors in the Court's domicile analysis, but it is useful to examine this factor separately as an initial matter, as the parties have exchanged specific allegations concerning the extent to which Murphy has spent time physically present in West Virginia and Florida.  Bloom argues that Murphy has been, and continues to be, a West Virginia resident, in part because there is evidence that she continues to be physically present in West Virginia and comparatively little evidence that she spends time at her Florida condominium. To support this proposition, Bloom highlights that when Murphy has signed documents relating to the instant litigation, she has done so from a West Virginia address.  In that same vein, Bloom points to multiple TLC reports and filings, including documents published mere months before this civil action was filed–among them one document filed in Florida–that list a West Virginia address for Murphy.  Bloom also draws attention to statements Murphy made during a 2008 lawsuit in which she was the plaintiff, stemming from an automobile accident.[1]  Her complaint in that case, filed on January 31, 2008, provided, "The Plaintiff

---

[1] In a footnote in his motion to remand, Bloom argues that Murphy should be judicially estopped from denying that she is a citizen of West Virginia, based upon the statements she made during the 2008 litigation. The Court rejects this argument for multiple reasons.  "In order for judicial estoppel to apply, (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact instead of law; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently."  Folio v. City of Clarksburg, 134 F.3d 1211, 1217-18 (4th Cir. 1998).  While Murphy's statements made during the 2008 litigation were statements of fact instead of law, they cannot serve to judicially estop Murphy in the instant case. Her 2008 statements are not inconsistent with her current position, as her general statements about where she resided in 2008 do not necessarily conflict with her statements about where she resides at present.  Indeed, as a person may have more than one residence, Murphy's statements in 2008 could potentially be seen as consistent even if her living situation had not changed in the interim.  See Am. Heartland Port, Inc. v. Am. Port Holdings, Inc., Civil Action No. 5:11-CV-50, 2014 WL 1123384, at *3 (N.D.W. Va. Mar. 21, 2014). Furthermore, Murphy argues that her citizenship was entirely irrelevant during the 2008 personal injury litigation, and therefore any facts concerning her state of domicile were never "accepted" by the court during the 2008 proceeding.

is a resident of Jefferson County, West Virginia." In a deposition taken on October 29, 2008, Murphy testified that her address was a residence in Charles Town, West Virginia, where she had lived for "[a]bout 30 something years."

To further support his argument that Murphy resides in West Virginia, Bloom proffers evidence intended to demonstrate that she does not reside in Florida. Most noteworthy is an "affidavit of non-service" that was executed when Bloom attempted to serve Murphy at her Florida condominium. Bloom's attempted service in Florida was unsuccessful and, according to the affidavit executed by Bloom's process server, management and security personnel at Murphy's Florida address stated that Murphy's "unit is unoccupied" and that she "comes for a week or two and does not return for months."

Murphy counters that she spends time, including most holidays, at her Florida condominium, and that her family regularly visits her there. She notes that, as the head of an international corporation with offices in multiple locations, she travels frequently and is unable to spend much time at home. Murphy admits that she still spends time in West Virginia, but states that she has consistently taken steps to make Florida her permanent home since she purchased a condominium in Jensen Beach, Florida, in 2007. Additionally, her doctors and dentist are located in Florida, she utilizes a personal phone number with a Florida area code and her mail is forwarded to her Florida address.

A sizable portion of Murphy's argument is comprised of her own statements of intent concerning her domicile. "I stay in Florida as often as I can," she says, "and I intend to remain there for the rest of my life." Murphy argues that these declarations of intent should be afforded "heavy, but not conclusive, weight." See Hamilton, 13 F. Supp. 2d at 370. Conversely, as Bloom observes, "[a] party's statements about his or her domicile,

particularly with regard to an intent to retain or establish one . . . are subject to judicial skepticism and accorded little weight . . . when they are in conflict with the facts or a party's actual conduct." <u>Vandevander</u>, 2011 U.S. Dist. LEXIS 139904, *5 (citing 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3612 (3d ed. 2009)) (internal quotation marks omitted). Here, armed with an appropriate amount of skepticism, the Court has carefully considered the balance of the evidence for and against Murphy's claims relating to her residence in Florida. When certain factors in a domicile analysis are in equipoise, a party's declarations of intent can be even more valuable to a court's determination. <u>See</u> <u>Moonracer, Inc. v. Collard</u>, Civil Action No. 5:13-CV-455-BO, 2013 WL 5949863, at *2 (E.D.N.C. Nov. 6, 2013). Ultimately, the facts are not in direct conflict with Murphy's statements and there is sufficient evidence to support her declarations of intent.

### 2.    Voter Registration and Voting Practices

Murphy has been registered to vote in Florida since February 15, 2007. She has voted in Florida, in person, in the last two presidential elections. This factor weighs heavily in favor of finding Murphy to be domiciled in Florida. <u>See</u> <u>Griffin</u>, 310 F. Supp. at 343.

### 3.    Situs of Property

Bloom alleges that Murphy owns more than eighty-six acres of property in West Virginia, located in both Berkeley and Jefferson Counties. However, Murphy avers that she has been attempting to sell this property since 2007, when she purchased her residence in Florida. She removed the West Virginia property from the market in 2010 because of the depressed real estate market. Murphy asserts that, just prior to the filing of this suit, she contacted her real estate agent for purposes of listing the West Virginia property for sale once more. She has provided the Court with an affidavit executed by a licensed realtor,

16

Robert Andrew Johnson of Martinsburg, West Virginia. Johnson stated that he has had discussions with Murphy about putting her West Virginia property back on the market for at least the past year. Johnson further stated that Murphy told him the West Virginia property was "simply too much for her" now that her children are grown. He also stated that Murphy "expressed the desire to sell this home . . . and spend more time in Florida." Murphy's Florida home appears to constitute the extent of her real property in that state.

### 4. Location of Brokerage and Bank Accounts

The record does not contain evidence of Murphy's banking practices. Bloom offers a document to demonstrate that Murphy's mortgage is held by the Bank of Charles Town in West Virginia. Bloom argues that this evidence, which establishes Murphy's relationship with a local West Virginia bank, weighs in favor of finding that Murphy is domiciled in West Virginia. While Murphy offers no evidence to demonstrate that she does not bank in West Virginia, the Court finds the mortgage held by the Bank of Charles Town to be of little, if any, probative value in determining Murphy's domicile.

### 5. Place of Employment and Membership in Associations

The factors that weigh most heavily in favor of remand concern Murphy's role with TLC and her community involvement in West Virginia. The "Leadership" section of TLC's website identifies Murphy as the co-founder, president, CEO and chairman of the board of the company, which is headquartered in Inwood, West Virginia. See Leadership, The Library Corporation - About Us (last visited June 30, 2015), http://www.tlcdelivers.com/library_automation/leadership. In addition, attached to his motion to remand, Bloom provides the Court with copies of several TLC corporate filings, each of which provide a West Virginia address for Murphy. As Bloom notes, Murphy's

17

West Virginia address is provided in documents that were filed recently and in a document that was filed in Florida.

Furthermore, Murphy, who moved to West Virginia in the 1980s, has established strong ties to the local community, including membership in multiple associations that are based in the Eastern Panhandle region of West Virginia.  Her profile on TLC's website identifies her as "a member of the Board of Directors of the Shepherd University Foundation, the Board of Directors of the Charles Town Library, and the Campaign Committee of Hospice of the Panhandle.  Mrs. Murphy also serves on the Shenandoah Museum Council."  Id.  In her 2008 deposition, she testified that she attended a church in Jefferson County.

Murphy argues that her role in TLC is not indicative of West Virginia citizenship.  In an affidavit executed on March 7, 2015, she averred that while she remains the president and CEO of TLC, she is "able to exercise [her] duties from Florida and from other locations."  To that end, she stated, "I have delegated much of the control of the day to day operations to others, thus relieving me of much of the need to be present in West Virginia."  In an attempt to demonstrate her ties to the local community in Florida, she has stated that she is a member of the Island Dunes Country Club in Jensen Beach, Florida.  However, it appears that membership in the Island Dunes Country Club is an automatic benefit triggered by Murphy's condominium purchase.

As to the corporate filings that list a West Virginia address for Murphy, she argues that "to the extent that such reports were not updated to note Ms. Murphy's Florida residence and intent to remain in Florida, such updating is a matter between the Library Corporation and the various state corporation authorities, and has no relevance to the

18

present analysis." The Court disagrees with Murphy's analysis on this point. Murphy cites to an order issued by this Court for the proposition that residency in a state alone does not render an individual a citizen of that state. See Shepherd v. Little Giant Enters., Civil Action No. 3:13-CV-78, 2013 WL 5969598, at *2 (N.D.W. Va. Nov. 8, 2013). But simply because one factor in this Court's analysis is not dispositive does not mean that the same factor is irrelevant.[2] Murphy is the head of a corporation with a principal place of business in West Virginia. That corporation's website and public documents identify Murphy as a West Virginia resident with significant ties to the local community. While the Court finds that these facts are outweighed by the facts demonstrating her Florida citizenship, Murphy's connections to West Virginia are relevant.

### 6.      Driver's License and Automobile Registration

Murphy has utilized a Florida driver's license since at least April of 2013. As an exhibit to his motion to remand, Bloom attaches a speeding ticket that was issued to Murphy in 2013, and he notes that, while the ticket shows that Murphy has a Florida driver's license, it also indicates that she drives a car registered in West Virginia. However, in a supplemental affidavit provided as a surreply to the motion to remand, Murphy stated that she does not own a vehicle. Apparently, when she was pulled over in 2013, she was driving a company car.

---

[2] In Shepherd, the plaintiff's evidence of a defendant's residency–a document from the West Virginia Secretary of State listing the defendant as having a West Virginia address–was outweighed by evidence that the defendant was a citizen of Alabama. 2013 WL 5969598, at *2 ("[I]n light of the evidence showing that [the defendant] has lived in Alabama for six years, is registered to vote in Alabama, owns a car registered in Alabama, pays Alabama income taxes, and has an Alabama driver's license, the Court finds that she was not only physically present in Alabama when the Plaintiff initiated this action, but intended to make it her home.").

### 7.    Payment of Taxes

Bloom argues that Murphy pays property taxes in West Virginia on the property that she owns in Berkeley and Jefferson counties.  Bloom references a document indicating that Murphy identified one piece of property, located in Jefferson County, as "Tax Class: 2," which applies to "[a]ll property owned, used and occupied by the owner exclusively for residential purposes."  Additionally, Bloom asserts that Murphy owns the Berkeley County property on which TLC's headquarters are located.

Murphy counters by noting that she pays property taxes in three states–Florida, Virginia and West Virginia–but she files in each state as a Florida citizen.  She has filed as a "non-resident" of West Virginia since 2007.  Furthermore, she avers that she has claimed the homestead tax exemption for her Florida residence in each of the last seven years.  Murphy goes on to argue that to the extent she, like many retirees, elected to move to Florida because Florida has no state income tax, such a decision further evinces her intent to make Florida her home.

### 8.    Totality of the Circumstances

As noted, an analysis of the individual factors relevant to this case demonstrates the merits of both parties' arguments.  However, that is not to say the existence of federal jurisdiction is "doubtful."  See Mulcahey, 29 F.3d at 151 ("If federal jurisdiction is doubtful, a remand is necessary.").  In this case, the Court is able to determine, with sufficient clarity, that Murphy has carried her burden in demonstrating that Florida is her true domicile.  While certain factors weigh in favor of finding that Murphy is domiciled in West Virginia, the totality of the circumstances demonstrates that she is a Florida citizen.  Murphy spends time in both states, and owns property in each, but she maintains that she considers

Florida to be her home. She has a Florida driver's license and is registered to vote there, and she pays taxes as a Florida resident.

The Court accepts Murphy's declarations of intent and finds them to be consistent with the facts presented in the record. Of course, "an amorphous desire to relocate from one place to another at an indeterminate future date does not suffice to effect a change of domicile." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 367 (1st Cir. 2001). Indeed, even "a definite and sincere intention to make a place one's home at some time in the future is not enough to make that place an individual's present domicile." Croff v. Faught, Civil Action No. 04-CV-1540, 2005 WL 230668, at *1 (E.D. Pa. Jan. 31, 2005) (citing Wright & Miller, supra, § 3612 (3d ed. 2014)). But here, Murphy has demonstrated far more than an intent to transition to Florida in the future. The facts in the record that serve to persuade the Court that her statements should be accepted outnumber–and are more persuasive than–the facts that might indicate otherwise. That Murphy stated she resided in West Virginia seven years ago does not demonstrate that she is domiciled in the state now. As detailed above, the Court has considered Murphy's history and personal ties to West Virginia. But now, as she has further established herself as a Florida resident, her statements of intent to remain in Florida are buttressed by the evidence before the Court. Murphy has demonstrated that she is now, and intends to remain, a Florida citizen.

## IV. Conclusion

Valid diversity of citizenship jurisdiction exists in this civil action, as the matter in controversy exceeds the sum or value of $75,000 and the case is between citizens of different states. See § 1332(a). As Defendant TLC was not properly joined and served at the time of removal and Defendant Murphy is not a citizen of West Virginia, this case was

properly removed to this Court.  <u>See</u> § 1441(b).

Accordingly, the Court **ORDERS** that the Plaintiff's Motion to Remand, [ECF 4], is

**DENIED**.

As a final matter, the Plaintiff's request for attorney's fees and expenses is **DENIED**.

Because removal was proper, the Defendant had "an objectively reasonable basis for

removal."  <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 136 (2005).

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** June 30, 2015

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE