# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**JOSHUA BLOOM,**

    Plaintiff,

v.                              **CIVIL ACTION NO.: 3:15-CV-11 (GROH)**

**THE LIBRARY CORPORATION
and ANNETTE MURPHY,**

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(d)
## AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

Currently pending before the Court is Plaintiff Joshua Bloom's Motion Pursuant to Federal Rule of Civil Procedure 56(d) [ECF No. 25], filed on May 26, 2015. Also before the Court is a Motion for Partial Summary Judgment [ECF No. 21], filed by Defendants Annette Murphy and the Library Corporation ("TLC") on April 30, 2015. Bloom moves the Court to grant appropriate relief under Rule 56(d), which allows the Court to defer consideration of or to deny a pending motion when a nonmovant shows that he cannot present facts essential to justify its opposition. For the following reasons, the Court **GRANTS** Bloom's motion for relief and accordingly orders that the Defendants' motion is **DENIED**.

### I. Background

Bloom filed his original complaint against Murphy and TLC in the Circuit Court of Berkeley County, West Virginia, on November 7, 2014. In that complaint, Bloom alleged that he entered into an employment agreement with TLC in early 2007 and, in reliance

upon that agreement, he and his wife resigned from their jobs and moved from New York to West Virginia, where they purchased a home. Bloom averred that he performed well in his role as TLC's chief technology officer and contributed to TLC's success during his approximately seven years with the company. The basis for the instant lawsuit is a dispute concerning Bloom's termination from his role at TLC. Bloom alleged that on November 8, 2013, Murphy–TLC's co-founder, president, chief executive officer ("CEO") and chairman of the board–informed him that he was fired. Bloom alleged that he was fired without cause. In his complaint, Bloom asserted that TLC and Murphy committed violations of the West Virginia Wage Payment and Collection Act ("WPCA"), and were also liable for breach of contract and intentional infliction of emotional distress.

The Defendants were not served with a copy of the original complaint. On November 26, 2014, Bloom filed an amended complaint, which reiterated the same allegations made in the original complaint, but which included as an attachment an unsigned employment agreement. Bloom avers that the attached agreement represents the employment agreement he entered into with TLC in early 2007. The Defendants contend that the unsigned document is not a binding agreement.

Murphy filed a notice of removal with this Court on February 10, 2015, pursuant to 28 U.S.C. § 1441. Murphy alleged that this Court possessed valid diversity of citizenship jurisdiction under 28 U.S.C. § 1332, because Bloom, a citizen of Pennsylvania, and Murphy, a citizen of a Florida, were not citizens of the same state, and because the amount in controversy exceeded the sum of $75,000. See 28 U.S.C. § 1332(a). Murphy further argued that, although her Co-Defendant, TLC, was then and is now a Maryland corporation with a principal place of business in West Virginia, and is therefore considered to be a

citizen of both Maryland and West Virginia, the forum defendant rule did not preclude Murphy's removal of this case because at the time of removal TLC had not been properly joined and served as a defendant under § 1441(b)(2). Bloom contested Murphy's removal by way of a motion to remand filed on February 25, 2015. The Court denied the motion to remand, finding that Murphy was a Florida citizen for purposes of diversity jurisdiction and that the forum defendant rule did not preclude removal under § 1441(b)(2) as TLC had not been properly joined and served at the time of removal.

Now before the Court are two motions concerning the relief Bloom is seeking under the WPCA. See W. Va. Code § 21-5-4 to -18. The WPCA is "remedial legislation designed to protect working people and assist them in the collection of compensation wrongly withheld." Citynet, LLC v. Toney, 772 S.E.2d 36, 49 (W. Va. 2015) (internal quotation marks and citations omitted). In Count 1 of his amended complaint, Bloom alleged that TLC–and Murphy, as TLC's officer–violated the WPCA by failing to pay him the termination benefit provided in the alleged employment agreement within an appropriate time period.[1] Bloom alleged that his termination benefit constituted "accrued wages and/or fringe benefits capable of calculation and payable directly to Plaintiff." On April 30, 2015, the Defendants moved for partial summary judgment, asking this Court to "find that severance payments

---

[1] Bloom alleged that section 21-5-4.b of the WPCA required TLC pay him in full within seventy-two hours. The WPCA has been amended multiple times in the past several years. An amendment that took effect on June 12, 2013, did away with the seventy-two hour requirement and implemented a requirement that final wages be paid in full no later than either the next regular payday or within four business days, whichever comes first. S.B. 355, 81st Leg., Reg. Sess. (W. Va. 2013). The most recent amendment to the WPCA, which took effect on June 11, 2015, further modified the time period in which final wages must be paid and reduced the liquidated damages penalty under the WPCA from three times the amount owed to two times the amount owed. S.B. 12, 82nd Leg., Reg. Sess. (W. Va. 2015). The alleged employment agreement between Bloom and TLC provides that an employee terminated without cause "shall receive a payment equal to one year of base compensation . . . within 30 days following the date of termination of employment." Relevant to the issue now before the Court, the WPCA's definitions of "wages" and "fringe benefits" have remained the same. See W. Va. Code § 21-5-1(c), (l).

3

are not wages" as defined by the WPCA and that Bloom is unable to recover under Count 1 of his amended complaint.  Bloom responded in opposition to that motion on May 21, 2015.  Bloom argues that his termination benefit was intended to be compensation for work performed and constituted a "fringe benefit" and "wages" under the WPCA.  Bloom further argues that genuine issues of material fact exist concerning the terms of the parties employment agreement, in large part because the Defendants contest the validity of the unsigned agreement attached to Bloom's amended complaint while other evidence in the record contains references to a contract concerning Bloom's employment with TLC. Bloom contends that these issues create multiple genuine issues of material fact sufficient to defeat summary judgment at this early stage in the proceedings.  The Defendants replied in support of their motion on May 29, 2015.

On May 26, 2015, while the motion for partial summary judgment was pending, Bloom filed a motion for relief under Rule 56(d), in which he requests that this court either deny or defer ruling on the motion for partial summary judgment.  Attached to the motion is a declaration executed by Bloom's attorney, which articulates the specific reasons discovery is necessary for Bloom to present facts essential to justify his opposition to summary judgment.  The Defendants filed a response to the motion for relief on June 9, 2015.  The Defendants argue that their motion for partial summary judgment presents a question of statutory interpretation, which requires no fact-finding and can therefore be ruled upon prior to the close of discovery.  In his reply brief, Bloom reiterates his argument that discovery is necessary before the Court can address the issues raised by the Defendants' motion.

## II. Applicable Law

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when there is no genuine issue as to any material fact and the moving party is entitled to judgment in its favor as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 323-35; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

Generally, a court should only grant summary judgment "after adequate time for discovery." See Celotex, 477 U.S. at 322. "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." McCray v. Md. Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014). An exception to this principle applies when a motion presents "purely legal questions" which can be resolved "at any time without any

factual determinations, and thus may be decided prior to the conclusion of discovery." Negri v. Nationwide Mut. Ins. Co., Civil Action No. 5:11-CV-3, 2011 WL 5041214, at *5 (N.D.W. Va. Oct. 24, 2011). Under Federal Rule of Civil Procedure 56(d), a nonmovant faced with contesting a motion for summary judgment may seek relief when certain facts are unavailable to him. Rule 56(d) provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

The declaration or affidavit provided by the nonmovant in support of a Rule 56(d) motion must specify the reasons necessitating additional discovery or otherwise notify the district court as to which specific facts are yet to be discovered. See McCray, 741 F.3d at 484.

A motion for summary judgment should be denied when "the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Anderson, 477 U.S. at 250 n.5). Allowing sufficient time for discovery is "considered especially important when the relevant facts are exclusively in the control of the opposing party." Id. at 246-47 (quoting 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2741 (3d ed. 1998)). Under these principles, a nonmovant's request to conduct discovery under Rule 56 is "broadly favored and should be liberally granted." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010)).

## III. Discussion

As an initial matter, the Court must touch upon the legal argument raised in the Defendants' motion for partial summary judgment, as it is intertwined with Bloom's motion under Rule 56(d). The Defendants move this Court to "hold that severance payments are not wages" under the WPCA. In support, the Defendants rely heavily on a 2010 decision issued by the Circuit Court of Berkeley County, West Virginia, which reached that conclusion. See Lehman v. United Bank, Inc., No. 09-CV-616, 2010 WL 8947775 (W. Va. Cir. Ct. 2010) ("[S]everance pay does not meet the definition of wages under West Virginia law, and need not be paid within 72 hours of termination."). At this stage of the proceedings in the instant case, however, it would be inappropriate to issue such a ruling, and the Court makes no finding concerning the conclusions of the Lehman court. Under these circumstances, were the Court to grant the Defendants' motion without considering any of the facts of this case, the result would be akin to an advisory opinion. The Defendants seek an order affirming that severance benefits in general are not wages under the WPCA. But as to the specific claim raised in Bloom's amended complaint, the record at present provides no clarity as to what, if any, benefits Bloom was entitled to under the parties' employment agreement. This is problematic, as the specific provisions concerning fringe benefits contained in an applicable employment policy determine what benefits are included in the WPCA's definition of "wages." Meadows v. Wal-Mart Stores, Inc., 530 S.E.2d 676, 680 (W. Va. 1999).

Although the unsigned employment agreement discusses termination benefits and fringe benefits in separate sections, Bloom's amended complaint alleges that his termination benefit constituted "an accrued fringe benefit" and he has produced an affidavit

7

in which he attested that it was his understanding the termination benefit was compensation for his employment that had already vested at the time of his termination. The Supreme Court of Appeals of West Virginia holds that the terms of the WPCA must be construed liberally, in accordance with the remedial nature of the legislation, to best give effect to its purpose of protecting West Virginia employees. See Citynet, 772 S.E.2d at 49. The WPCA's definition of "wages" includes certain fringe benefits. Under section 21-5-1(c) of the WPCA, "the term 'wages' shall . . . include then accrued fringe benefits capable of calculation and payable directly to an employee: *Provided*, That nothing herein contained shall require fringe benefits to be calculated contrary to any agreement between an employer and his or her employees which does not contradict the provisions of this article." Fringe benefits are defined as being "any benefit provided an employee or group of employees by an employer, or which is required by law, and includes regular vacation, graduated vacation, floating vacation, holidays, sick leave, personal leave, production incentive bonuses, sickness and accident benefits and benefits relating to medical and pension coverage." W. Va. Code § 21-5-1(*l*). The Supreme Court of Appeals of West Virginia has explicitly stated that the use of the word "includes" as applied to the above-referenced examples of fringe benefits indicates that the list found in section 21-5-1(*l*) was not intended to be exclusive. Citynet, 772 S.E.2d at 50. In determining whether a fringe benefit has "then accrued" under section 21-5-1(c), "accrued" can be understood to mean "vested." See id. (citing Meadows, 530 S.E.2d at 688). As the concept of vesting is "concerned with expressly enumerated conditions or requirements" that must be met before a benefit becomes an enforceable right, "the payment of fringe benefits can only be governed by the terms of employment found in employment policies promulgated by

8

employers and agreed to by employees." Meadows, 530 S.E.2d at 688-89. Therefore, whether a specific fringe benefit meets the definition of wages under section 21-5-1(c) is "determined by the terms of employment and not by the provisions of W. Va. Code § 21-5-1(c)." Id. at 689; see also Spano v. Metro. Life Ins. Co., Civil Action No. 2:09-CV-01243, 2011 WL 2180657, at *3 (S.D.W. Va. June 2, 2011) ("In WPCA cases, courts must consider the specific employment agreement.").[2]

Under these circumstances, the Court is compelled to grant Bloom's Rule 56(d) motion and to allow discovery to proceed in normal course. The terms of the parties' employment agreement–if one existed–are essential to determining the nature of the alleged termination benefit and the applicability of the WPCA to Bloom's claim, and thus are essential to Bloom's ability to justify his opposition to summary judgment. As stated, the Defendants contest the validity of the unsigned employment agreement attached to Bloom's amended complaint. But the record already contains multiple emails referencing an employment contract between Bloom and TLC. The prospect of the existence of a different employment agreement alone justifies granting Bloom's Rule 56(d) motion and allowing for discovery to proceed.[3] It would be premature for the Court to grant summary

---

[2] The Spano court concluded its analysis of the WPCA by finding that a plaintiff was not owed any wages relating to commissions he earned after his termination, as "it is impossible to owe wages to an employee before the wages were earned." 2011 WL 2180657, at *3. As with the Defendants' reliance on Lehman, the Court again stresses that it does not reach this step of a WPCA analysis in this Order. Before the Court can hold that Bloom's termination benefit, as a severance payment, is not "wages" in a purely legal sense, the Court must have sufficient evidence from which it can determine that the termination benefit is in fact a severance payment.

[3] Another justification is found in the parties' dispute over whether Bloom was fired for cause or without cause. In Clay v. Consol Pennsylvania Coal Co., 955 F. Supp. 2d 588, 599 (N.D.W. Va. 2013), a Northern District of West Virginia court held that it could not grant the defendants' motion to dismiss despite the defendants' argument that a termination benefit did not accrue to the plaintiff, as the plaintiff had sufficiently plead that he was fired without cause and that his termination benefit was a fringe benefit which accrued under the parties' employment agreement.

judgment, as it is unclear whether an employment agreement existed, and, if one did exist, what the terms applicable to Bloom's termination benefit were.

Bloom's attorney adequately addresses these issues in the declaration attached to Bloom's Rule 56(d) motion. The declaration provides that "[m]aterial facts about the terms of the parties' contract or understanding, from Defendants' perspective, would be learned in discovery." Additionally, Bloom's attorney avers that other TLC employees received severance payments, and that facts about these payments–whether they were contractual or issued as a matter of company policy–could be revealed during discovery. Finally, Bloom's attorney asserts that the purpose of the termination benefit is important to the Court's understanding, as the benefit may have been intended as compensation for services rendered. Under West Virginia law as detailed above, facts relating to these issues are essential to Bloom's ability to justify his opposition to summary judgment. Accordingly, the Court grants Bloom's requested relief under Rule 56(d) and denies the Defendants' motion.

## IV. Conclusion

For the foregoing reasons, the Court **ORDERS** that the Plaintiff's Motion Pursuant to Federal Rule of Civil Procedure 56(d) [ECF No. 25] is **GRANTED**. The Court further **ORDERS** that the Defendants' Motion for Partial Summary Judgment [ECF No. 21] is **DENIED**.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** August 10, 2015

_____
GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE